UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------

RITA PATRICK,

                       Plaintiff,

-against-

LOCAL 51, AMERICAN POSTAL WORKERS
UNION, AFL-CIO and SHANEQUA JOHNSON-
DUGGINS,

                       Defendants.

19 CV 10715 (NSR)
OPINION & ORDER

---------------------------------------------------------------

NELSON S. ROMÁN, United States District Judge:

      Plaintiff Rita Patrick ("Plaintiff"), a member of Local 51, American Postal Workers Union, AFL-CIO ("Local 51" or the "Union"), brings this action against the Union and its President, Shanequa Johnson-Duggins ("Johnson-Duggins") (together, "Defendants") pursuant to the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. §§ 411–415, 529. Plaintiff alleges that Defendants removed her from an elected shop steward position in violation of the free speech, due process, and anti-retaliation provisions of the LMRDA, and that Defendants are also liable for breach of contract under state law. (*See* Complaint ("Compl"), ECF No. 1, at 5–8.)

      Before the Court is Plaintiff's application for a temporary restraining order and preliminary injunction that: (1) restores Plaintiff to her elected position as shop steward for Local 51; (2) precludes Defendants from acting in concert with other persons to prevent Plaintiff from entering its facility to perform her function as an elected shop steward; and (3) prohibits Defendants from taking any disciplinary action against Plaintiff without according her all of the procedural safeguards guaranteed to her by LMRDA. (*See* Plaintiff's Mem. of Law in Support of Order to

Show Cause ("Plf. Mem."), ECF No. 24, at 4). The Court has carefully reviewed the parties' submissions and considered the arguments made by both parties at a show cause hearing held on February 5, 2020 at the United States Courthouse, 300 Quarropas St., White Plains, NY 10601. For the reasons discussed below, Plaintiff's application is DENIED.

## BACKGROUND

Plaintiff joined Local 51 in 1978 and has served in the position of shop steward of the Union since 1981. (Patrick Decl. in Supp. of OSC and Prelim. Inj. ("Patrick Decl."), ECF No. 21, at ¶¶ 5, 8.) In April 2019, Plaintiff was re-elected to the position of shop steward. (*Id.* at ¶ 8.)

On October 6, 2019, at a Local 51 general membership meeting, the Union President, Defendant Johnson-Duggins, discussed a financial discrepancy in the Union's bank accounts. (*Id.* at ¶ 13.) The members at the meeting also discussed Johnson-Duggins' use of Union funds to attend a union conference. (*Id.* at ¶ 14.) Subsequently, on or about October 16, 2019, Plaintiff expressed concerns about these perceived financial irregularities in a newsletter that she distributed to the Local 51 membership. (*Id.* at ¶ 15; Ex. 2.)

On October 22, 2019, Johnson-Duggins sent Plaintiff a "cease and desist" letter, which stated that the October newsletter contained "blatantly false" statements, and that Johnson-Duggins would pursue "immediate legal action seeking any and all relief necessary to redress this harm and prevent further damage to [her] reputation." (*Id.* at ¶ 16; Ex. 3.)

On October 23, 2019, Plaintiff circulated a second newsletter, in which she "demand[ed] an accounting and return of $6,000." (*Id.* at ¶ 16; Ex. 4.)

At the November 3, 2019 general membership meeting, the Union members and Johnson-Duggins discussed the financial discrepancy. (*Id.* at ¶ 18.) On November 10, 2019, Plaintiff

distributed a petition calling for additional membership meetings to discuss the financial discrepancies. (*Id.* at ¶ 20; Ex. 5.)

On November 14, 2019, Plaintiff received a call from a Local 51 Executive Board member informing her that she thought Plaintiff would be suspended as an elected shop steward. (*Id.* at ¶ 21.) That evening, Plaintiff went to the Westchester Postal Service Processing & Distribution Center ("P & DC") but was asked to leave the building by Postal Service management. (*Id.* at ¶ 23.) Plaintiff has been barred from the Westchester P & DC since that date. (*Id.* at ¶ 28.)

By letter dated November 14, 2019, Johnson-Duggins notified Plaintiff that she had "suspended [Plaintiff's] activities as a Tour 1 Shop Steward until further notice." (Reply Affirmation of Rita Patrick ("Patrick Reply Aff."), ECF No. 25, Ex. A.) It did not include any written charges, but stated that Johnson-Duggins "will be filing charges according to Article 15 of the National Constitution." (*Id.*)

Plaintiff asserts that Defendants' actions violated Sections 101, 102, and 609 of the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. §§ 411–415, 529, and state law. Plaintiff seeks reinstatement of her position, other injunctive relief, and monetary damages.

## LEGAL STANDARD

The Court applies the same standard to Plaintiff's applications for a preliminary injunction and a temporary restraining order. *See Local 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. New York Shipping Ass'n, Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992) (the "standards which govern consideration of an application for a temporary restraining order [ ] are the same standards as those which govern a preliminary injunction."); *Spencer Trask Software & Info. Servs., LLC v. RPost Int'l Ltd.*, 190 F. Supp. 2d 577, 580 (S.D.N.Y. 2002) (same).

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008). Generally, a party seeking a temporary restraining order or a preliminary injunction "must demonstrate that it will suffer irreparable harm absent injunctive relief and either (1) that it is likely to succeed on the merits of the action, or (2) that there are sufficiently serious questions going to the merits to make them a fair ground for litigation, provided that the balance of hardships tips decidedly in favor of the moving party." *Mullins v. City of New York*, 626 F.3d 47, 52–53 (2d Cir. 2010) (citing *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 34–35 (2d Cir. 2010)). However, where a party seeks a mandatory injunction "altering, rather than maintaining, the status quo," such as in this case, that party "must meet [a] more rigorous standard." *Almontaser v. New York City Dep't of Educ.*, 519 F.3d 505, 508 (2d Cir. 2008) (internal alterations omitted); *see also Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995) ("[W]e have required the movant to meet a higher standard where . . . an injunction will alter, rather than maintain, the status quo"). The moving party must establish a "'clear' or 'substantial' showing of a likelihood of success on the merits." *Almontaser*, 519 F.3d at 508 (quoting *Tom Doherty Assocs.*, 60 F.3d at 34).

## APPLICATION

As a preliminary matter, the Court notes that the parties agree that Plaintiff's application seeks a mandatory injunction, and therefore the more rigorous standard for issuing an injunction applies. (*See* Plf. Mem. at 8; Defendants' Mem. of Law in Opposition to Order to Show Cause ("Defs. Mem."), ECF No. 29, at 7–9.) The Court finds that Plaintiff has failed to make the requisite showings needed to clear this high bar for the reasons stated below.

**I.  Clear or Substantial Likelihood of Success on the Merits**

Under Article 8, Section 5 of the Local 51 Constitution & Bylaws, Union stewards "may be removed by the President for Just Cause. . . . Stewards are expected to SUPPORT their Union." (Johnson-Duggins Decl., ECF No. 30, Ex. A, at 11.) (emphasis in original).  Plaintiff argues that her suspension as shop steward was not supported by "just cause" and that her suspension violated the speech protections and removal procedures of the LMRDA.  The Court addresses each of these arguments in turn, beginning with the threshold issue of exhaustion.

    **a. Exhaustion of Union Remedies**

Article 17 of the Local 51 Constitution & Bylaws governs the President's removal of persons from Union positions.  (*See* Johnson-Duggins Decl., Ex. A, at 18.)  Plaintiff relies upon Article 17, Section 1, which provides that "[w]hen the President removes a person from a position from which [she] may be constitutionally removed, the President shall do so in writing to that person, explaining why that person is being removed." (*See id.*).  Plaintiff maintains that she never received any explanation for the suspension of her shop steward position.  And, at the show cause hearing, Defendants conceded that the written notice sent to Plaintiff regarding her suspension as shop steward did not contain an explanation as to why she was suspended.  (*See also* Patrick Reply Aff., Ex. A (letter dated November 14, 2019 stating only that Johnson-Duggins "will be filing charges according to Article 15 of the National Constitution.").)  Defendants counter that such an explanation was not required by the Union's Constitution & Bylaws because Plaintiff had merely been temporarily suspended, rather than permanently removed from her position.

At the same time, Defendants argue that Plaintiff failed to avail herself of internal union hearing procedures and should therefore be barred from pursuing this action in federal court.  Before a union member may "institute an action in any court," the LMRDA provides that:

> any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof . . .

LMRDA Section 101(a)(4), 29 U.S.C. § 411(a)(4). Defendants further cite Article 17, Section 2 of the Local 51 Constitution & Bylaws, which provides that a person removed from a Local 51 position:

> shall have 21 days following receipt of the removal, to file an appeal to the [Local] Executive Board, in writing, answering charges or explaining [her] position in 200 words or less. The Executive Board may, if they so choose, overturn the President by a ¾ vote of the Executive Board.

(Johnson-Duggins Decl., Ex. A, at 18.)

The LMRDA exhaustion provision is not an absolute requirement, but rather a matter "within the sound discretion of the courts." *NLRB v. Indus. Union of Marine & Shipbuilding Workers of Am., AFL-CIO, Local 22*, 391 U.S. 418, 428 (1968) (concluding "a court . . . might consider whether a particular procedure was 'reasonable' and entertain the complaint even though those procedures had not been 'exhausted.'"); *see also Ostrowski v. Local 1-2, Util. Workers Union of Am., AFL-CIO*, 530 F. Supp. 208, 212 (S.D.N.Y. 1980) ("The limitations of [LMRDA Section 101(a)(4), 29 U.S.C.] Section 411(a)(4) are permissive; thus, whether or not a plaintiff will be required to utilize his internal union appeals is a matter within the discretion of the trial judge."). Defendants bear the burden of establishing entitlement to the exhaustion defense. *Johnson v. Gen. Motors*, 641 F.2d 1075, 1080 (2d Cir. 1981).

In determining whether to require a party to exhaust intra-union remedies before bringing suit, courts in the Second Circuit look to the following three factors:

> First, whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; second, whether the internal union appeals procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks . . .; and third, whether exhaustion of internal

6

> procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim.

*Howd v. United Food & Commercial Workers Union*, *Local 919*, 383 F. App'x 38, 40 (2d Cir. 2010) (quoting *Maddalone v. Local 17, United Bhd. of Carpenters & Joiners of Am.*, 152 F.3d 178, 186 (2d Cir. 1998)). "[T]he Union must prove that its procedures are reasonable, which can be demonstrated by showing that Union members have been informed of the availability of internal appellate remedies and that these procedures are not particularly cumbersome or confusing." *Johnson*, 641 F.2d at 1080. Furthermore, in cases where the plaintiff alleges free speech violations, such violations "generally justif[y] dispensing with administrative remedies." *Ostrowski*, 530 F. Supp. at 213.

Here, the most salient factor is the third, as Plaintiff has not alleged the pervasive hostility of Local 51 officials, nor has she alleged that the Union appeals procedures would not have been adequate to restore her to her shop steward position. Instead, Plaintiff has raised questions with respect to the reasonableness of the Union procedures. It is not immediately clear on its face that Article 17 of the Local 51 Constitution & Bylaws even applies to Plaintiff's situation, where she was suspended, rather than removed, from her elected position. In addition, the nature of Plaintiff's claims, which contain allegations that the Union infringed the LMRDA's free speech protections, militates against the imposition of the exhaustion requirements. *See id.* at 213. Finally, it would seem unfair to require Plaintiff to write an appeal to the Union's Executive Board—in a statement fewer than 200 words (for context, no longer than the previous paragraph)—"explaining [her] position" when she does not know the very charges against her that she is to refute. In exercising its discretion, the Court concludes that Plaintiff was not required to utilize internal union procedures before bringing this action. *See id.* (exercising court's discretion

to not require exhaustion of internal union appeals where plaintiffs alleged free speech violations). Accordingly, the Court proceeds to Plaintiff's LMRDA claims.

### b. Free Speech Claim Under LMRDA Section 101(a)(2)

Plaintiff alleges that Defendants suspended her shop steward position in retaliation against Plaintiff's exercise of her free speech rights and in violation of the LMRDA. Section 101(a)(2) of the LMRDA provides that "[e]very member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, argument, or opinions; and to express at meetings of the labor organization his views . . . ." 29 U.S.C. § 411(a)(2).[1] "Section 101(a)(2) protects union members from direct interference with union membership rights in retaliation for their expression of opinions concerning union activities." *Maddalone v. Local 17, United Bhd. of Carpenters & Joiners of Am.*, 152 F.3d 178, 183 (2d Cir. 1998) (citing *Cotter v. Owens*, 753 F.2d 223, 228 (2d Cir. 1985)).

While the Supreme Court has held that removal from union office does not generally constitute a violation of § 101(a)(2), *see Finnegan v. Leu*, 456 U.S. 431, 440–41 (1982), the Court subsequently clarified in *Sheet Metal Workers' International Association v. Lynn* that the retaliatory removal of an *elected* union official could state a cause of action. *See* 488 U.S. 347, 355 (1989) (finding removal of an elected business agent, in retaliation for statements made in opposition to dues increases, violated the LMRDA). The *Lynn* court reasoned that this exception aligns with the LMRDA's basic objective "to ensure that unions [are] democratically governed, and responsive to the will of the union membership as expressed in open, periodic elections." *Id.*

---

[1] Pursuant to Section 102 of the LMRDA, a private right of action exists for Section 101(a)(2) violations. *See* 29 U.S.C. § 412 ("Any person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate.").

at 354 (quoting *Finnegan*, 456 U.S. at 441). As such, the invocation of the LMRDA's protection is warranted because "the union members are denied the representative of their choice," and "the potential chilling effect on Title I free speech rights is more pronounced when elected officials are discharged." *Lynn*, 488 U.S. at 355; *see also Messina v. Local 1199 SEIU, Nat'l Health & Human Serv. Employees Union, AFL-CIO*, 205 F. Supp. 2d 111, 122 (S.D.N.Y. 2002) (applying the *Finnegan/Lynn* framework for establishing a violation of § 101(a)(2) for removal from elected union office.).[2]

To succeed on a claim of retaliation against an elected official in violation of the LMRDA, a plaintiff must establish that: "(1) his conduct constituted 'free speech' under the LMRDA; (2) that the speech was a cause for the Union taking action against him; and (3) damages." *Leavey v. Int'l Bhd. of Teamsters--Theatrical Teamsters Local Union No. 817*, No. 13-CV-0705 NSR, 2015 WL 5802901, at *8 (S.D.N.Y. Oct. 5, 2015) (quoting *Commer v. McEntee*, No. 00–cv–7913 RWS, 2006 WL 3262494, at *10 (S.D.N.Y. Nov.9, 2006)). Defendants focus their opposition to Plaintiff's claim on the first two elements.

---

[2] In addition to the *Lynn* exception for elected officials, the Second Circuit has also recognized another exception to *Finnegan*: Union officers are protected from removal where such action is part of a "purposeful and deliberate attempt . . . to suppress dissent within the Union." *Maddalone v. Local 17, United Bhd. of Carpenters & Joiners of Am.*, 152 F.3d 178, 184 (2d Cir. 1998) (quoting *Schonfeld v. Penza*, 477 F.2d 899, 904 (2d Cir. 1973)). To fall within this exception, a plaintiff must present "clear and convincing proof" that her dismissal was "part of a series of oppressive acts by the union leadership that directly threaten the freedom of members to speak out." *Maddalone v. Local 17, United Bhd. of Carpenters & Joiners of Am.*, 152 F.3d 178, 184 (2d Cir. 1998) (quoting *Cotter*, 754 F.2d at 229).

As Plaintiff does not allege "a series of oppressive acts"—her claims pertain to a singular act of suspension—this exception is not germane here. For the same reason, the case Plaintiff cites for support of her position, *Purdie v. Vanson*, is also inapposite because in that case the record demonstrated "a pattern of repression of free speech" through "unrebutted" affidavits. *See Purdie v. Vanson*, No. 93 CIV. 2912 (RPP), 1993 WL 256658, at *1 (S.D.N.Y. July 8, 1993) (ordering defendants to reinstate plaintiff to appointed shop steward position). In addition, the *Purdie* court found that the relevant provisions of the union's constitution were inconsistent with LMRDA Section 101(a)(2). *Id.*

#### i. Whether Plaintiff's Conduct Is Protected Under the LMRDA

Defendants claim that Plaintiff's allegations of financial impropriety were false, that Plaintiff made them knowingly with reckless disregard for their falsity, and thus the statements were not protected by the LMRDA. *See Loekle v. Hansen*, 551 F. Supp. 74, 81 (S.D.N.Y. 1982) (concluding speech not protected by LMRDA because "there is no constitutional value in false statements of fact. . . . [T]he interest in making such knowingly misleading statements . . . is limited indeed and not entitled to full free speech protection."). Defendants claim that the issues regarding the Union's accounts and Johnson-Duggins's expenditures had already been addressed and resolved at previous Local 51 general membership and Executive Board meetings, which Plaintiff attended. Defendants' position, therefore, is that Plaintiff's news flashes and bulletins do not fall within the ambit of the LMRDA's protection. At this nascent stage of the case, given Defendants' potentially viable objections on this issue, the Court finds that Plaintiff has not sufficiently demonstrated a "clear" or "substantial" likelihood of success in establishing this element.

#### ii. Whether Plaintiff's Speech Was A Cause of Her Suspension

The second element, causation, is established by demonstrating a "direct nexus between the union's action and the member's exercise of his [LMRDA § 101] rights." *Mayes v. Local 106, Int'l Union of Operating Engineers*, No. 86-cv-41, 1995 WL 30576, at *21 (N.D.N.Y. Jan. 20, 1995), *aff'd sub nom. Mayes v. Jones*, 99 F.3d 402 (2d Cir. 1995); *see also Depperman v. Local 1199 Union*, No. 91 CIV. 6696 (JFK), 1994 WL 225434, at *5 (S.D.N.Y. May 25, 1994) (plaintiff alleging LMRDA § 101(a)(2) claim "must show that the action was in retaliation for the officer's political speech which goes to the democratic integrity of the union"). For example, in *Lynn*, the Supreme Court found that a LMRDA § 101(a)(2) retaliation claim was properly alleged where the plaintiff was told "he was being removed 'indefinitely' from his position as business representative

specifically because of his outspoken opposition to [a] dues increase." 488 U.S. at 350.

Defendants dispute that Plaintiff's newsletters were a cause of Plaintiff's suspension from her shop steward position. Defendants argue that Plaintiff's flyers "ha[d] nothing to do" with her obligation to the members or with the decision to suspend her, which was a "separate" issue. (*See* Johnson-Duggins Decl. ¶ 27; Lacoya Jones Decl., ECF No. 31, at ¶ 4.) Instead, Defendants maintain that Plaintiff was suspended because she failed to meet her shop steward responsibilities in other ways. They cite her failure to timely meet with the Postal Service to discuss the Postal Service's termination of a Local 51 member. (*See* Johnson-Duggins Decl. ¶¶ 26–27.)[3] Defendants also maintain that another reason for Plaintiff's suspension was Plaintiff's failure to intercede in an altercation between employees while on duty. (*See* Johnson-Duggins Decl. ¶ 22–23, 25.) In sum, according to Defendants, Plaintiff was suspended "because she was not being responsible to the membership. She missed a deadline on a removal case, she refused to go upstairs when management called for a shop steward and she had not followed up with a member who had given her a statement about bullying." (*See id.* ¶ 26.)

Plaintiff counters that, according to several witnesses, Defendant Johnson-Duggins explicitly tied Plaintiff's indefinite suspension to her speech regarding union affairs (*i.e.*, the news bulletins or "flashes," flyers, and petitions that Plaintiff distributed at meetings). (*See* Taylor Paige Decl., ECF No. 22, at 2; Kenneth Carlton Decl., ECF No. 26 at 2; Zora Dudley Decl., ECF No. 27, at 1–2; Arlene McDuffe Decl., ECF No. 28, at 2.) Thus, according to Plaintiff, Plaintiff's protected speech was at least partly the cause of her suspension.

---

[3] Plaintiff claims she successfully sought an extension of time from Acting Manager Distribution Operations Victor Lugo to hold a meeting with the Postal Service. (*See* Patrick Reply Aff. at 2 & Ex. A at 2 (Grievance Time Limit Extension dated November 4, 2019).) According to Johnson-Duggins, however, although Lugo signed an agreement for an extension of time, a supervisor, Swinson, ultimately denied the grievance paperwork as "untimely." (*See* Johnson-Duggins Decl. ¶ 30; Patrick Reply Aff., Ex. A at 1 (Step 2 Grievance Appeal Form).) Subsequently, a Labor Relations Specialist also reaffirmed that the grievance was untimely. (*See* Johnson-Duggins Decl. ¶ 32 & Ex. E at 2 (Step 2 Grievance Appeal Decision).)

11

At best, the Court has been presented with two conflicting narratives regarding the motivation for Plaintiff's suspension. Without the benefit of additional discovery, the Court is not in a position to make a finding of fact on this disputed question. Thus, the Court finds that, at this early stage of litigation, Plaintiff has not established a "clear" or "substantial" likelihood of success on this element of her § 101(a)(2) claim. *See Dilacio v. New York City Dist. Council of United Bhd. of Carpenters & Joiners of Am.*, No. 08 CIV 6959 CSH THK, 2008 WL 4449361, at *7 (S.D.N.Y. Sept. 29, 2008) (denying motion for a temporary restraining order on LMRDA Section 101 claims where plaintiff had not established clear likelihood of success on the merits).

### c. Due Process Claim Under LMRDA Sections 101(a)(5) and 609

Plaintiff also challenges her suspension under the procedural protections set forth in LMRDA Sections 101(a)(5) and 609. Section 101(a)(5) provides:

> No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined . . . unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare [her] defense; (C) afforded a full and fair hearing.

29 U.S.C. § 411(a)(5). Note that Section 101(a)(5) applies when a member is "fined, suspended, expelled, or otherwise disciplined." *See id.* Similarly, Section 609 provides:

> "It shall be unlawful for any labor organization, or any officer, agent, shop steward, or other representative of a labor organization, or any employee thereof to fine, suspend, expel, or otherwise discipline any of its members for exercising any right to which he is entitled under the provisions of this chapter."

29 U.S.C.A. § 529. Thus, Section 609 also applies only when a member is "fine[d], suspend[ed], expel[led], or otherwise discipline[d]." *See id*. Plaintiff does not allege that she was fined, suspended, or expelled as a *member* of the Union; thus, the central inquiry is whether her suspension from the shop steward position amounts to "discipline" under Sections 101(a)(5) and 609.

12

Defendants argue that neither of those provisions is applicable to the suspension of Plaintiff from the shop steward position. They cite several cases in support of the proposition that suspension from a union position does not constitute "discipline" under Sections 101(a)(5) and 609. *See e.g., Ulrich v. Soft Drink, Brewery Workers & Delivery Employees*, No. 17-CV-4730 (KMK), 2019 WL 1228056, at *19, 21 (S.D.N.Y. Mar. 15, 2019) (suspension/termination of plaintiff as union's elected vice president does not constitute "discipline" within meaning of Section 101(a)(5)); *Green v. Brigham*, No. 03 CV 5190 (JG), 2005 WL 280327, * 4 (E.D.N.Y. Feb. 3, 2005) (Section 101(a)(5) claim based on removal of member from elective union office dismissed: "It is well settled that Section 101(a)(5) only protects union members against a loss of membership rights due to being unfairly disciplined by a union. It does not protect union members in their official capacities (as elected or appointed officials) from losing rights related to their official position.'"); *Messina*, 205 F. Supp.2d at 116, 124–126 (plaintiff's Sections 101(a)(5) and 609 claims regarding her removal from position of elected union delegate dismissed because plaintiff's removal not "discipline" within meaning of those provisions); *Depperman v. Local 1199 Union*, No. 91-CV-6696, 1993 WL 36132, * 4 (S.D.N.Y. Feb. 10, 1993) (dismissing Sections 101(a)(5) and 609 claims based on removal of member from position of elected union delegate on ground that said statute "provides safeguards to members subjected to discipline, not delegates or agents [of union]"), *app. den.*, 17 F.3d 1425 (2d Cir. 1994); *Helmer v. Briody*, 759 F. Supp. 170, 178–79 (S.D.N.Y. 1991) (dismissing Sections 101(a)(5) and 609 claims based on suspension of union's elected business manager because said provision "applies only to suspension of membership in the union; it does not refer to suspension of a member's status as an officer of the union") (emphasis omitted).

This collection of cases suggests that Plaintiff will have an uphill battle in arguing that her suspension amounts to "discipline" under Sections 101(a)(5) and 609. Plaintiff has therefore not demonstrated a "clear" or "substantial" likelihood of success on these claims.

### d. Breach of Contract Claim

Plaintiff's last cause of action sounds in breach of contract. Plaintiff alleges that the Constitution and Bylaws of the National American Postal Workers Union ("APWU") constitute a binding and enforceable agreement between Local 51 and its members, and that Defendants breached this contract by suspending Plaintiff as an elected shop steward without due process. (*See* Compl. ¶¶ 58–61.) Plaintiff's briefing elaborates that the suspension was made "for unlawful reasons, reasons that are not permitted under the APWU National Constitution." (*See* Plf. Mem. at 13.) Plaintiff does not specify which provisions of the APWU constitution she is referring to. Moreover, "[a] union's interpretation of its own constitution is entitled to great deference in order to avoid interference with internal union affairs . . . and . . . will be upheld unless patently unreasonable." *Tusino v. Int'l Bhd. of Teamsters*, 38 F. App'x 91, 93 (2d Cir. 2002) (quoting *Sim v. New York Mailers' Union Number 6*, 166 F.3d 465, 470 (2d Cir. 1999). Given these sparing allegations, Plaintiff has not demonstrated a "clear" or "substantial" likelihood of success on her contract claim.

## II. Irreparable Harm

Although the Court has already found that Plaintiff has not established a "clear" or "substantial" likelihood of success on any of her claims, which defeats her application for a temporary restraining order and preliminary injunction, the Court nonetheless assesses whether she has shown irreparable harm. "A showing of irreparable harm is essential to the issuance of a preliminary injunction." *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 332 (2d Cir. 1995). In

order to demonstrate that it will suffer irreparable harm, a party seeking preliminary injunctive relief "must demonstrate that absent a preliminary injunction [it] will suffer 'an injury that is neither remote nor speculative, but actual and imminent,' and one that cannot be remedied 'if a court waits until the end of trial to resolve the harm.'" *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (quoting *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005)). "[T]he moving party must demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." *Freedom Holdings*, 408 F.3d at 114.

The primary harm that Plaintiff relies upon is the chilling of free speech. Plaintiff argues that the loss of free speech constitutes an irreparable injury, citing *Ostrowski*. In that case, the court explained:

> As a general principle, the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury. Thus, a showing of a 'chilling effect' on plaintiffs' exercise of First Amendment rights is adequate to support injunctive relief. The notion that the right of freedom of speech may be 'chilled' is equally applicable in the context of the LMRDA.

530 F. Supp. 208, 215 (S.D.N.Y. 1980) (internal citations omitted). In *Ostrowski*, a plaintiff who worked for Con Edison was removed as shop steward after voicing concerns regarding radiation at Con Edison's Indian Point nuclear power plant. *Id.* at 211–12. The *Ostrowski* plaintiff alleged that the purpose and effect of his removal as shop steward was to silence union members who sought to obtain and share information on the dangers of radiation exposure. *Id.* at 214. The

plaintiff submitted several affidavits attesting that members felt afraid of sharing or asking for information concerning radiation for fear of discipline by the union. *Id.* at 215–16.

By contrast, here, Plaintiff is the only Local 51 member who has asserted any kind of chilling effect.[4] Plaintiff argues that "after Ms. Patrick was unlawfully suspended from her position as a shop steward, it became difficult for her and other members to obtain signatures for the petition calling for membership meetings. A couple of members even asked if they could take their names off the petitions." (Plf. Mem. at 9, citing Patrick Decl. ¶ 29.) Plaintiff "concluded that these members were afraid of Johnson-Duggins because if she could suspend me, she could harm them too." (Patrick Decl. ¶ 29.) However, none of the other declarations submitted by Plaintiff mention any concern regarding fears of speaking openly about union matters or fears of reprisals. (*See generally* Taylor Paige Decl.; Kenneth Carlton Decl.; Zora Dudley Decl.; Arlene McDuffe Decl.) Moreover, as Defendants point out, the causal connection is missing: Plaintiff has not shown that any other member declined to sign a petition or discuss the financial discrepancies *because* Plaintiff was suspended. Plaintiff has not been suspended from union membership, and remains free to attend and participate in Local 51 membership meetings, speak on issues there, and distribute leaflets/pamphlets like any other member. In sum, the dearth of evidence presented to support the possibility of irreparable injury distinguishes this case from *Ostrowski*.

The Court also acknowledges that Plaintiff filed her lawsuit on November 19, 2019 (*see* ECF No. 1), and did not serve Defendants until December 6, 2019 (*see* ECF Nos. 5, 6). Plaintiff

---

[4] Plaintiff further points to Johnson-Duggin's override of the Executive Board's vote, which resulted in a 5-4 vote in favor of keeping Plaintiff in her position. (*See* Plf. Mem. at 13.) But, as explained *supra*, union stewards "may be removed by the President for Just Cause." Article 8, § 5 of Local 51 Constitution & Bylaws (Johnson-Duggins Decl., ECF No. 30, Ex. A, at 11.) Plaintiff has not established that the Executive Board's vote was required by the LMRDA or Local 51's Constitution & Bylaws.

16

then served her application for a temporary restraining order on January 29, 2020. (*See* Defs. Mem. at 11). This delay further indicates that Plaintiff has not established the "extreme or very serious damage" that would result in the absence of preliminary relief. *See Tom Doherty Assocs.*, 60 F.3d at 34.

## CONCLUSION

For the foregoing reasons, Plaintiff's application is DENIED. Clerk of the Court requested to terminate the motion (ECF No. 20).

Dated: February 11, 2020  
       White Plains, New York

SO ORDERED:

_____  
NELSON S. ROMÁN  
United States District Judge

17