USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/6/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RITA PATRICK,

                     Plaintiff,

-against-

LOCAL 51, AMERICAN POSTAL WORKERS UNION, AFL-CIO, and SHANEQUA JOHNSON-DUGGINS,

                     Defendants.

No. 19-cv-10715 (NSR)

OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge:

Plaintiff Rita Patrick ("Plaintiff"), a member of Local 51, American Postal Workers Union ("APWU"), AFL-CIO ("Local 51" or the "Union"), brings this action against the Union and its President, Shonequa Johnson-Duggins ("Johnson-Duggins") (together, "Defendants") pursuant to the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. §§ 411-415, 529. Plaintiff alleges that Defendants removed her from an elected shop steward position in violation of the free speech, due process, and anti-retaliation provisions of the LMRDA. (Compl., ECF No. 1.) Plaintiff also brings a claim for breach of contract under state law. (*Id.*)

Before the Court is Defendants' motion to vacate certificates of default issued on January 21, 2020. (ECF No. 34.) Defendants also seek leave, *nunc pro tunc*, to file and serve their Answer dated January 21, 2020. (*Id.*) For the following reasons, Defendants' motion is GRANTED.

## BACKGROUND

The Court assumes familiarity with the factual background of this case, as delineated in the Court's February 11, 2020 Opinion and Order denying Plaintiff's application for a temporary restraining order and preliminary injunction (the "TRO Application"). (TRO Order, ECF No. 33.)

In essence, Plaintiff alleges that, on or about November 13, 2019, she was improperly suspended by Defendant Johnson-Duggins from her elected position as shop steward for Local 51. (*See* Compl. ¶¶ 16, 32-35.) Plaintiff maintains that her suspension was a result of her raising concerns about alleged financial discrepancies and irregularities reflected in Local 51's bank accounts. (*See id.* ¶¶ 20-27.)

Following her suspension, Plaintiff commenced this action on November 19, 2019.[1] (ECF No. 1.) On December 23, 2019, she filed affidavits of service, which noted that service of process on Defendants had occurred on December 6, 2019. (ECF Nos. 5 & 6). On January 21, 2020, after Plaintiff filed her proposed certificates of default[2] (ECF Nos. 9 & 11), a Clerk's Certificate of Default was issued for each defendant.[3] (ECF Nos. 13 & 14.) That same day, after the entry of default, Defendants filed their Answer. (ECF No. 16.) When the parties were unable to reach an agreement to vacate the entry of default, this motion followed.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 requires the Clerk of Court to enter a party's default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). After an entry of a default is issued, the defaulting party may seek to set aside the entry. *See id.* 55(c).

"The dispositions of motions for entries of defaults and default judgments and relief from the same under Rule 55(c) are left to the sound discretion of a district court because it is in the best

---

[1] Plaintiff initially commenced this action *pro se*. (*See* Compl. at 1, 9.) Counsel for Plaintiff, however, filed a Notice of Appearance on December 23, 2019. (ECF No. 4.)
[2] Plaintiff had attempted to file a motion for entry of default on January 8, 2020, which was rejected as deficient. (ECF No. 7.) Plaintiff was, in turn, directed to prepare and file a proposed Clerk's Certificate of Default as to each defendant, as well as an affidavit in support of the proposed certificates.
[3] Upon issuance of the Certificates of Default, Plaintiff filed a motion for default judgment. (ECF No. 15.) The Court denied the motion, without prejudice, for failure to follow its Individual Practices. (ECF No. 18.) Plaintiff has not otherwise sought default judgment since that time.

position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993). In exercising this discretion, "[i]t is the responsibility of the [] court to maintain a balance between clearing its calendar and affording litigants a reasonable chance to be heard." *Id.* at 96. A court's "desire to move its calendar should not overcome its duty to do justice." *Cody v. Mello*, 59 F.3d 13, 15 (2d Cir. 1995).

Defaults are generally disfavored, *Diakuhara*, 10 F.3d at 96, and courts must be mindful of the "strong policies favoring resolution of genuine disputes on their merits." *Randazzo v. Sowin*, No. 97-CV-0967(DC), 1998 WL 391161, at *2 (S.D.N.Y. July 13, 1998) (quoting *Traguth v. Zuck*, 710 F.2d 90, 94 (2d Cir. 1983)). At the same time, a defaulting party who seeks to vacate a default entry may not do so seamlessly; good cause is required. Fed. R. Civ. P. 55(c). In determining good cause, courts must consider "[1] the willfulness of the default, [2] the existence of a meritorious defense, and [3] the level of prejudice that the non-defaulting party may suffer should relief be granted." *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 171 (2d Cir. 2001). Notably, this is a "less rigorous" standard "than the 'excusable neglect' standard for setting aside a default judgment by motion pursuant to Rule 60(b)." *Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981).

## DISCUSSION

As explained below and in consideration of the strong policy in favor of resolving genuine disputes on their merits, the Court finds that there is good cause to set aside the entries of default against Defendants. Defendants' default was not willful, they have demonstrated the existence of meritorious defenses, and vacating the default will not cause Plaintiff any prejudice.

**I.      Willfulness of the Default**

In general, a finding of willfulness is appropriate where "there is 'evidence of bad faith' or the default arose 'from egregious or deliberate conduct.'" *See Holland v. James*, No. 05-CV-5346, 2008 WL 3884354, at *2 (S.D.N.Y. Aug. 21, 2008) (quoting *Am. Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 60-61 (2d Cir. 1996)).  Here, Defendants explain that their failure to file a timely answer stems from their inability to retain legal counsel until January 17, 2020. (Defs. Mem. of Law in Supp. of Mot. ("Defs. Mot."), ECF No. 37, at 4-6); Decl. of Shonequa Johnson-Duggins ("J-D Decl."), ECF No. 35, ¶¶ 19-20.)  Specifically, in her sworn declaration, Johnson-Duggins details the challenges in obtaining and funding outside legal representation (which was needed because of Local 51's lack of any in-house counsel or counsel on retainer).  (J-D Decl. ¶ 6.)  This process involved corresponding with, and waiting on responses from, APWU officials and insurance brokers over the course of several weeks—a factor that was complicated by the Christmas and New Year holidays.  (*See id.* ¶¶ 12-15.)  Despite the prolonged process described in her declaration, Johnson-Duggins was eventually able to identify counsel to represent the Union and herself in early January.  (*Id.* ¶ 15.)  After Johnson-Duggins confirmed that the cost of legal representation would exceed $1,500, thereby necessitating authorization that was outside of her control, the president of another APWU local union suggested that she seek approval from Local 51's Executive Board.  (*Id.* ¶ 16.)  Using that advice, Johnson-Duggins sought and obtained Executive Board approval to retain counsel on January 16, 2020, and, upon retention, counsel filed an Answer five days later.  (*Id.* ¶¶ 17-18.)

The Court initially notes that, notwithstanding the explanation for their delay, Defendants should have been aware of their obligations to respond to Plaintiff's complaint within the time set forth by the Federal Rules of Civil Procedure.  But failure to follow these rules does not

4

automatically equate to bad faith or egregious or deliberate conduct. Instead, "cognizant of the fact that Plaintiff[] seem[s] to have sought an entry of default 'with no notice whatsoever' to Defendants,"[4] the Court finds that Defendants' failure to file a timely answer amounts to, at most, carelessness or negligence. *Ningbo Mizhihe I&E Co. Ltd. v. Does 1-200*, No. 19 Civ. 6655 (AKH), 2019 WL 6841995, at *2 (S.D.N.Y. Dec. 16, 2019) (quoting *Gonzalez v. City of New York*, 104 F. Supp. 2d 193, 198 (S.D.N.Y. 2000)); *see also DirecTV, Inc. v. Rosenberg*, No. 02 Civ. 2241 (RCC), 2004 WL 345523, at *3 (S.D.N.Y. Feb. 24, 2004) ("Willfulness implies knowing action, while carelessness and negligence denote the actor should have known better but did not."). Accordingly, this prong of the analysis plainly weighs in Defendants' favor.

## II.   Existence of a Meritorious Defense

For a defense to be meritorious at this stage, it need not be ultimately persuasive. *Am. Alliance*, 92 F.3d at 61. Instead, "[a] meritorious defense exists if based on the defendant's version of events, the fact finder has some determination to make." *Id.* (quoting *Anilina Fabrique de Colorants v. Aakash Chems. and Dyestuffs, Inc.*, 856 F.2d 873, 879 (7th Cir. 1988)). In other words, to make a sufficient showing of a meritorious defense, a defendant "need not establish [its] defense conclusively, but [it] must present evidence of facts that, if proven at trial, would constitute a complete defense." *SEC v. McNulty*, 137 F.3d 732, 740 (2d Cir. 1998). This is a "low threshold" for defendants to meet. *Randazzo*, 1998 WL 391161 at *3 (quoting *Holford v. Harvey*, 169 F.R.D. 41, 44 (S.D.N.Y. 1996)).

Defendants proffer several defenses in their motion, many of which were already raised in opposing the TRO Application. (Defs. Mot. 6-10.) After a review of the parties' various submissions from both this motion and the TRO Application, the Court concludes that Defendants

---

[4] Johnson-Duggins affirms that she was never asked by Plaintiff whether she intended to file an answer and was never made aware, at any point, that Plaintiff intended to seek an entry of default. (*See* J-D Decl. ¶ 14.)

have met their burden of setting forth meritorious defenses.  The Court focuses on three specific examples below.

*First*, Defendants challenge whether Plaintiff's conduct is protected under the LMRDA. (Defs. Mot. 8.)  Defendants essentially contend that the issues Plaintiff raised regarding the Union's accounts and Johnson-Duggins' expenditures had already been addressed and resolved at previous Local 51 general membership and Executive Board meetings, which Plaintiff attended. (*See* Defs. Mot. App'x A at 7-9.)  For that reason, Defendants argue that her subsequent news flashes and bulletins were false and therefore not covered within the ambit of LMRDA's protections. (*Id.*)  Although Plaintiff vehemently disputes this position and argues that she will be meritorious on her claim (Pl. Mem. of Law in Opp. to Defs. Mot. ("Pl. Opp."), ECF No. 41, at 3-9), Defendants appear to have a viable objection for purposes of the "meritorious defense" analysis.

*Second*, Defendants dispute whether Plaintiff's suspension was based on her expressive activity or based on her failure to fulfill her responsibilities as a shop steward. (Defs. Mot. 8.)  In support, Defendants refer to Johnson-Duggins' sworn declaration opposing the TRO Application. That declaration indicates that the Union suspended Plaintiff because of, *inter alia*, her failure to (1) timely meet with the United States Postal Service to discuss the Postal Service's termination of a Local 51 member, and (2) intercede in an altercation between employees. (*Id.* App'x B ¶¶ 22-27.)  Although Plaintiff outlines evidence that indicates that her expressive conduct was, in fact, what motivated her suspension (Pl. Opp. 5-8), Defendants' proffered explanation presents a conflicting narrative that satisfies the meritorious defense standard.

*Finally*, Defendants maintain that Plaintiff's suspension did not constitute discipline under LMRDA Sections 101(a)(5) and 609, 29 U.S.C. §§ 411(a)(5) and 529, namely because her suspension did not affect her rights *qua* member of Local 51. (Defs. Mot. 8.)  Defendants support

this contention by referring to its arguments raised in opposing the TRO Application and the cases cited in support. (Defs. App'x A at 17-20; *see also* TRO Order at 13 (collecting cases cited by Defendants).) Plaintiff maintains that these cases are irrelevant because they refer to elected union officials rather than elected union members. (Pl. Opp. 13.) Instead, she contends that the Supreme Court's decision in *Sheet Metal Workers' Int'l Ass'n v. Lynn*, 488 U.S. 347 (1989) supports her legal contention that her indefinite suspension affected her rights *qua* member of Local 51. (Pl. Opp. 13-14.) But as Defendants aptly note, *Lynn* is distinguishable because it involved the removal of an elected business agent that was challenged under the free-speech protections of Section 101(a)(2), rather than the due process protections of Sections 101(a)(5) or 609. *See Lynn*, 488 U.S. at 351, 353 n.5. As their cited collection of cases continue to suggest an uphill battle for Plaintiff (*see* TRO Opinion at 14), Defendants have set forth a "meritorious defense" on this issue.

Overall, given that this case is still in its infancy, Defendants have submitted sufficient arguments and evidence to clear the low "meritorious defense" bar. This factor of the Rule 55(c) analysis accordingly weighs in Defendants' favor.

### III. Prejudice to Plaintiff

"Prejudice results when delay causes the loss of evidence, create[s] increased difficulties of discovery or provide[s] greater opportunity for fraud and collusion." *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983). Critically, "[d]elay alone is not a sufficient basis for establishing prejudice." *Id.* Moreover, it is incumbent on the plaintiff to demonstrate that "any prejudice resulting from the defendant's default cannot be rectified in the Court in another manner were the default to be vacated." *Murray Eng'g, P.C. v. Windermere Props. LLC*, No. 12-CV-0052(JPO), 2013 WL 1809637, at *6 (S.D.N.Y. Aug. 30, 2013).

Here, Plaintiff does not proffer any contention that there has been a loss of evidence, increased difficulties of discovery, or an opportunity for fraud. In fact, Plaintiff does not appear to have even addressed this prong of the analysis in her opposition. As the Court does not otherwise discern any prejudice suffered by Plaintiff as a result of Defendants' untimely Answer, it concludes that this prong of the Rule 55(c) analysis weighs in Defendants' favor.

## CONCLUSION

For the foregoing reasons, Defendants' motion to vacate the certificates of default issued on January 21, 2020 is GRANTED. Defendants are likewise GRANTED leave, *nunc pro tunc*, to file and serve their Answer (ECF No. 16) dated January 21, 2020. The parties are directed to complete the attached Case Management Plan and submit it to the Court by June 5, 2020.

The Clerk of Court is respectfully directed to vacate the entries of default at ECF No. 13 & 14. The Clerk of Court is further directed to terminate the motion at ECF No. 34.

Dated:  May 6, 2020
White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge

UNITED STATES DISTRICT COURT                                    Rev. May 2014
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

                                                                                **CIVIL CASE DISCOVERY PLAN**
                                 Plaintiff(s),             **AND SCHEDULING ORDER**

    - against -

                                   Defendant(s).       _____ CV _____ (NSR)

---------------------------------------------------------------x

        This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):

1. All parties [consent] [do not consent] to conducting all further proceedings before a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c). The parties are free to withhold consent without adverse substantive consequences. (If all parties consent, the remaining paragraphs of this form need not be completed.)

2. This case [is] [is not] to be tried to a jury.

3. Joinder of additional parties must be accomplished by _____.

4. Amended pleadings may be filed until _____. Any party seeking to amend its pleadings after that date must seek leave of court via motion.

5. Interrogatories shall be served no later than _____, and responses thereto shall be served within thirty (30) days thereafter. The provisions of Local Civil Rule 33.3 [shall] [shall not] apply to this case.

6. First request for production of documents, if any, shall be served no later than _____.

7. Non-expert depositions shall be completed by _____.

   a. Unless counsel agree otherwise or the Court so orders, depositions shall not be held until all parties have responded to any first requests for production of documents.

   b. Depositions shall proceed concurrently.

   c. Whenever possible, unless counsel agree otherwise or the Court so orders,

        non-party depositions shall follow party depositions.

8. Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9. Requests to Admit, if any, shall be served no later than _____.

10. Expert reports shall be served no later than _____.

11. Rebuttal expert reports shall be served no later than _____.

12. Expert depositions shall be completed by _____.

13. Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14. **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15. Any motions shall be filed in accordance with the Court's Individual Practices.

16. This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17. The Magistrate Judge assigned to this case is the Hon. _____.

18. If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19. The next case management conference is scheduled for _____, at _____. (The Court will set this date at the initial conference.)

SO ORDERED.

Dated: White Plains, New York
_____

_____
Nelson S. Román, U.S. District Judge