UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RITA PATRICK,

                              Plaintiff,

        -against-

LOCAL 51, AMERICAN POSTAL WORKERS
UNION, AFL-CIO et al,

                              Defendants.

---

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/22/2021

19-cv-10715 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Plaintiff Rita Patrick ("Plaintiff"), a member of Local 51, American Postal Workers Union ("APWU"), AFL-CIO ("Local 51" or the "Union"), brings this action against the Union and its President, Shonequa Johnson-Duggins ("Johnson-Duggins") (together, "Defendants") pursuant to the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. §§ 411-415, 529. Plaintiff alleges that Defendants removed her from an elected shop steward position in violation of the free speech, due process, and anti-retaliation provisions of the LMRDA. (Compl., ECF No. 1.) Plaintiff also brings a claim for breach of contract under state law. (*Id.*)

Before the Court is Plaintiff's motion for reconsideration. (ECF No. 49.) For the following reasons, Plaintiff's motion for reconsideration is denied.

## BACKGROUND

The Court assumes familiarity with the factual background of this case, as delineated in the Court's February 11, 2020 Opinion and Order denying Plaintiff's application for a temporary restraining order and preliminary injunction (the "TRO Application"). (TRO Order, ECF No. 33.) In essence, Plaintiff alleges that, on or about November 13, 2019, she was improperly

suspended by Johnson-Duggins from her elected position as shop steward for Local 51. (See Compl. ⁋⁋ 16, 32-35.) Plaintiff maintains that her suspension was a result of her raising concerns about alleged financial discrepancies and irregularities reflected in Local 51's bank accounts. (*Id.* ⁋⁋ 20-27.)

Following her suspension, Plaintiff commenced this action on November 19, 2019. (ECF No. 1.) On December 23, 2019, she filed affidavits of service, which noted that service of process on Defendants had occurred on December 6, 2019. (ECF Nos. 5 & 6). On January 21, 2020, after Plaintiff filed proposed certificates of default (ECF Nos. 9 & 11), a Clerk's Certificate of Default was issued for each defendant. (ECF Nos. 13 & 14.) That same day, after the entry of default, Defendants filed their Answer. (ECF No. 16.)

On March 11, 2020, Defendants filed a motion to vacate the certificates of default and for leave, *nunc pro tunc*, to file and serve their Answer, dated January 21, 2020. (ECF No. 34.) On May 6, 2020, the Court, considering the strong policy in favor of resolving genuine disputes on their merits, and finding that Defendants had demonstrated (1) that the default was not willful, (2) the existence of meritorious defenses, and (3) that vacating the default would not cause Plaintiff prejudice, granted Defendants' motion. (ECF No. 46.) On July 28, 2020, Plaintiff filed a motion for reconsideration challenging the Court's finding of the existence of meritorious defenses. (ECF No. 49.)

## STANDARD OF LAW

### I.    Motion for Reconsideration

Motions for reconsideration are governed by Local Civil Rule 6.3 and Federal Rule of Civil Procedure 60(b). "The standard for granting a motion for reconsideration pursuant to Local Rule 6.3 is strict." *Targum v. Citrin Cooperman & Company, LLP*, 2013 WL 6188339, at * 1 (S.D.N.Y. Nov. 25, 2013). Motions for reconsideration are "addressed to the sound discretion of

the district court and are generally granted only upon a showing of exceptional circumstances."
*Mendell ex rel. Viacom, Inc. v. Gollust*, 909 F.2d 724, 731 (2d Cir. 1990). A motion to reconsider
"is not a vehicle for ... presenting the case under new theories ... or otherwise taking a second
bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir.
2012) (quotation and citation omitted); see also *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v.
Stroh Cos.*, 265 F.3d 97, 115 (2d Cir. 2001) (quoting *Polsby v. St. Martin's Press*, 2000 WL
98057, at *1 (S.D.N.Y. Jan. 18, 2000)) (Mukasey, J.) (in moving for reconsideration, "'a party
may not advance new facts, issues, or arguments not previously presented to the Court.'"). They
"will generally be denied unless the moving party can point to controlling decisions or data that
the court overlooked." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).
Reconsideration of a Court's previous order is "an extraordinary remedy to be employed
sparingly in the interests of finality and conservation of scarce judicial resources." *In re Initial
Pub. Offering Sec. Litig.*, 399 F. Supp. 2d 298, 300 (S.D.N.Y. 2005) (internal citation and
quotation omitted), aff'd sub nom. *Tenney v. Credit Suisse First Boston Corp.*, 2006 WL
1423785, at *1 (2d Cir. 2006).

## II.    Motion to Vacate Certificates of Default

Federal Rule of Civil Procedure 55 requires the Clerk of Court to enter a party's default
"[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or
otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). After
an entry of a default is issued, the defaulting party may seek to set aside the entry. *Id.* 55(c).

"The dispositions of motions for entries of defaults and default judgments and relief from
the same under Rule 55(c) are left to the sound discretion of a district court because it is in the best
position to assess the individual circumstances of a given case and to evaluate the credibility and
good faith of the parties." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993). In

3

exercising this discretion, "[i]t is the responsibility of the [] court to maintain a balance between clearing its calendar and affording litigants a reasonable chance to be heard." *Id.* at 96. A court's "desire to move its calendar should not overcome its duty to do justice." *Cody v. Mello*, 59 F.3d 13, 15 (2d Cir. 1995).

Defaults are generally disfavored, *Diakuhara*, 10 F.3d at 96, and courts must be mindful of the "strong policies favoring resolution of genuine disputes on their merits." *Randazzo v. Sowin*, 1998 WL 391161, at *2 (S.D.N.Y. July 13, 1998) (quoting *Traguth v. Zuck*, 710 F.2d 90, 94 (2d Cir. 1983)). At the same time, a defaulting party who seeks to vacate a default entry may not do so seamlessly; good cause is required. Fed. R. Civ. P. 55(c). In determining good cause, courts must consider "[1] the willfulness of the default, [2] the existence of a meritorious defense, and [3] the level of prejudice that the non-defaulting party may suffer should relief be granted." *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 171 (2d Cir. 2001).

## DISCUSSION

In its May 6, 2020 opinion, the Court found that Defendants had demonstrated the existence of many meritorious defenses to Plaintiff's claims and provided three examples. One example was the defense that Plaintiff's conduct was not protected under the LMRDA because the issues Plaintiff raised regarding Union accounts and expenditures had been raised and resolved at previous Union meetings, and Plaintiff's subsequent news flashes and bulletins were therefore *knowingly* false. Plaintiff asserts the Court erred in determining this is a meritorious defense. (ECF No. 50 at 2.) Plaintiff further asserts that Defendants were unable to provide a meritorious defense to Plaintiff's breach of contract claim arising from a breach of Article 17 of the Local 51 constitution and bylaws.

## I.       LMRDA's Application to Knowingly False Statements

As an initial matter, the Court notes that for a defense to be meritorious at this stage, it need not be ultimately persuasive. *Am. Alliance Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d at 61. Instead, "[a] meritorious defense exists if based on the defendant's version of events, the fact finder has some determination to make." *Id.* (quoting *Anilina Fabrique de Colorants v. Aakash Chems. and Dyestuffs, Inc.*, 856 F.2d 873, 879 (7th Cir. 1988)). In other words, to make a sufficient showing of a meritorious defense, a defendant "need not establish [its] defense conclusively, but [it] must present evidence of facts that, if proven at trial, would constitute a complete defense." *SEC v. McNulty*, 137 F.3d 732, 740 (2d Cir. 1998). This is a "low threshold" for defendants to meet. *Randazzo*, 1998 WL 391161 at *3 (quoting *Holford v. Harvey*, 169 F.R.D. 41, 44 (S.D.N.Y. 1996)).

In *Loekle v. Hansen*, a court in this district determined that, under certain circumstances, "knowingly false or misleading statements of fact" are not protected under the LMRDA. *Loekle v. Hansen*, 551 F. Supp. 74, 82 (S.D.N.Y. 1982). Plaintiff argues that *Loekle*'s finding is contrary to Second Circuit precedent, which generally protects false and malicious speech. *See Salzhandler v. Caputo*, 316 F.2d 445, 451 (2d Cir. 1963) (finding that a union may not subject a member to disciplinary action for criticism of union management, even if such criticism is libelous); *Petramale v. Loc. No. 17 of Laborers Int'l Union of N. Am.*, 736 F.2d 13, 16 (2d Cir. 1984) ("criticism of union officers, even when it amounts to slander, is protected speech under the LMRDA"). The Court already considered this argument in granting Defendants' motion to vacate. Although Second Circuit precedent indicates that criticism of a union is generally protected under the LMRDA, *Loekle* indicates that in certain circumstances where false or misleading statements are *knowingly* made, the LMRDA may not apply. In fact, the *Loekle* opinion acknowledges and distinguishes itself from cases like *Salzhandler*. The Court stresses

that the threshold to establish a meritorious defense for the purposes of vacating a certificate of default is low and that the Court's finding that a defense is meritorious under this analysis does not mean that Defendants will ultimately prevail. Therefore, the Court affirms its original finding that Defendants' allegations that Plaintiff made knowingly false statements is a meritorious defense.

Further, the Court notes that even if this particular defense did not constitute a meritorious defense, the Court's May 6, 2020 opinion additionally found that Defendants have a meritorious defense based on their assertion that Plaintiff was suspended due to her failure to fulfill her responsibility, rather than her expressive activity. Plaintiff failed to challenge the Court's ruling as to this second defense, which is also a defense to Plaintiff's LMRDA claims. Accordingly, Plaintiff's argument is also moot.[1]

## II.     Breach of Contract Claim

Plaintiff additionally argues that Defendants failed to present a meritorious defense to Plaintiff's breach of contract claim based on violations of Article 17 of the Local 51 constitution and bylaws. Pursuant to Article 17, when a President *removes* a person from a position, the President must provide written notice explaining why that person is being removed. However, Defendants allege Plaintiff was *suspended* with pay, not *removed* from her position and that Article 17's requirements therefore do not apply. As such, Defendants have a meritorious defense to Plaintiff's breach of contract claim.

*** 

---

[1] Plaintiff argues that her motion for reconsideration was necessary because of new arguments raised by Defendants in their reply brief, which the Court "seemingly relied" upon, and constitute a "manifest injustice." The Court notes that the issue of whether knowingly false statements could constitute a defense was raised in Defendants' moving papers, (ECF No. 37 at 8) (asserting as a defense that "[t]he activity Plaintiff claims was a basis of her suspension as a shop steward was not protected by [the] LMDRA"), and Plaintiff responded to the argument in her opposition papers (ECF No. 41 at 8-9).

Pursuant to the above analysis, the Court affirms its original finding that Defendants have meritorious defenses to Plaintiff's claims. Therefore, on the basis of the Court's uncontested findings that Defendants' default was not willful and vacating the default would not cause Plaintiff prejudice, and the affirmation of the existence of meritorious defenses, the Court finds that vacatur was appropriate and denies Plaintiff's motion.

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion for reconsideration is DENIED. The parties are directed to complete a revised Case Management Plan and Scheduling Order (blank form attached hereto). Said Scheduling Order shall be submitted to Chambers by April 5, 2021. The Court will then issue an Order of Reference to Magistrate Judge Paul E. Davison. The parties are directed to contact Judge Davison within seven (7) business days of the date of the Order of Reference to schedule a conference.

The Clerk of the Court is directed to terminate the motion at ECF No. 49.

Dated:   March 22, 2021                         SO ORDERED:

   White Plains, New York

                              _____

                                 NELSON S. ROMÁN

                              United States District Judge